UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

|  |  |  |
|---|---|---|
| FV ERIN RENEE, LLC<br>and SEA HARVEST, INC.,<br>    Plaintiffs,<br><br>v.<br><br>PROMET MARINE SERVICES CORP.,<br>    Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | C.A. No. 09-340-M |

## MEMORANDUM AND ORDER

JOHN J. MCCONNELL, JR., United States District Judge.

This matter is before the Court on Defendant's Motion for a New Trial (ECF No. 39) following a jury verdict in favor of Plaintiffs in the amount of $2,342,000. For the reasons set forth below, Defendant's Motion is DENIED.

In September 2011, Plaintiffs FV Erin Renee, LLC and Sea Harvest, Inc. ("Plaintiffs") tried a damages-only case before a jury against Defendant Promet Marine Services Corp. ("Defendant" or "Promet") for the money damages resulting from Defendant's negligent care of Plaintiffs' vessel. That vessel, the ERIN RENEE, sank while in Promet's custody because Promet failed to properly secure a sea chest.[1] Defendant conceded liability before trial.

The amount of damages owed to Plaintiffs was the single issue before the jury. Based on applicable law, the jury was tasked with determining the fair market value of the ERIN RENEE, the reasonable cost to repair her to her pre-sinking condition, whether Plaintiffs were entitled to lost profits, and whether the vessel depreciated in value. The evidence and testimony were presented to the jury over the course of four days, beginning September 7, 2011. The jury

---

[1] A sea chest is an "opening[] in the hull of a vessel for withdrawing cooling water." *ConocoPhillips v. U.S. E.P.A.*, 612 F.3d 822, 830 (5th Cir. 2010).

returned a verdict of $2.1 million for the cost to repair the vessel as well as $242,000 to compensate for lost profits. Pursuant to applicable law and by agreement of the parties, the Court entered Judgment in favor of Plaintiffs in the amount of $2,342,000 together with costs. Before the Court is Promet's motion for a new trial.

I. STANDARD OF REVIEW

A "court may, on motion, grant a new trial on all or some of the issues . . . after a jury trial, for any reason for which a new trial has heretofore been granted in an action at law in federal court." Fed. R. Civ. P. 59(a)(1)(A). A district court may order a new trial "only if the verdict is against the law, against the weight of the credible evidence, or tantamount to a miscarriage of justice." *Crowe v. Marchand*, 506 F.3d 13, 19 (1st Cir. 2007) (quoting *Casillas-Díaz v. Palau*, 463 F.3d 77, 81 (1st Cir. 2006)). Judicial interference with a jury verdict is warranted only where the verdict represents "a blatant miscarriage of justice." *Acevedo-Garcia v. Monroig*, 351 F.3d 547, 566 (1st Cir. 2003) (quoting *Sanchez v. Puerto Rico Oil Co.*, 37 F.3d 712, 717 (1st Cir. 1994)).

When a party files a motion for a new trial based on the amount of damages awarded, the Court must consider whether the award is supported by the evidence. In cases involving only economic loss, as opposed to those involving pain and suffering, the Court may find that "a verdict is excessive as a matter of law if shown to exceed 'any rational appraisal or estimate of the damages that could be based upon the evidence before the jury.'" *Kolb v. Goldring, Inc.*, 694 F.2d 869, 871 (1st Cir. 1982) (quoting *Glazer v. Glazer*, 374 F.2d 390, 413 (5th Cir. 1967)).

II. DISCUSSION

Defendant argues that there are three independent grounds upon which the Court should grant a new trial in this case. First, Promet argues that the jury's assessment of both fair market

value and cost of repair was not supported by the evidence. Second, Promet argues that the jury's damages calculations failed to account for any depreciation of the ERIN RENEE. Finally, Promet argues that the Court erred in excluding testimony from Mr. Joseph DiMaio regarding the amount he would have been willing to pay for the vessel prior to the sinking.

    A.    Fair Market Value and Cost of Repair

The jury determined, based on the evidence, that the fair market value of the ERIN RENEE was $2.4 million.[2] Fair market value of a damaged or lost vessel is defined as "the sum which, considering all the circumstances, probably could have been obtained for her on the date of the collision; that is, the sum that in all probability would result from fair negotiations between an owner willing to sell and a purchaser desiring to buy." *Standard Oil Co. v. S. Pac. Co.*, 268 U.S. 146, 155-56 (1925). The Court instructed the jury that if no comparable sales existed to determine fair market value under the *Standard Oil* definition, then it could consider other factors, such as the owner's opinion of the value, what the boat would have sold for on the date she sunk, new replacement costs less depreciation, opinions from experts such as marine surveyors and brokers, and the insured value of the boat. *King Fisher Marine Serv., Inc. v. NP Sunbonnet*, 724 F.2d 1181, 1185 (5th Cir. 1984); *see also E.I. DuPont de Nemours & Co. v. Robin Hood Shifting & Fleeting Serv., Inc.*, 899 F.2d 377, 380 (5th Cir. 1990).

Defendant argues that the jury's verdict determining the ERIN RENEE's fair market value is not supported by the evidence presented at trial. The Court disagrees. In this case, the record contains ample evidence that the jury's finding on fair market value was warranted based on the testimony and documents introduced and in light of the prevailing case law. The jury heard many fair market value numbers from different witnesses—$500,000 from both Nelson

---

[2] Defendant does not take issue with the jury's determination that Plaintiffs were entitled to $242,000 in lost profits.

Long (a boat broker hired by Plaintiffs) and David Dubois (a surveyor hired by Defendant); $950,000 as the insured value; $1 million from Steven Murphy (a surveyor hired by Plaintiffs); $2.4 million to $2.7 million from Sam Martin (Plaintiffs' estimator) and $3 million to $3.5 million from Daniel Cohen[3] (the owner of the ERIN RENEE)—but those same witnesses also made clear that determining the fair market value of the ERIN RENEE was a difficult task.

The Court credits the jury's determination that $2.4 million was the fair market value prior to the sinking because it gave weight to the testimony of Plaintiffs' witnesses Mr. Cohen and Mr. Martin, who evaluated the value of the vessel, assessed the cost to bring her back to pre-sinking condition, and considered the cost of upgrades to the vessel. Mr. Cohen testified that he believed the ERIN RENEE was worth $3 million to $3.5 million before the sinking. As the owner of the vessel for many years, Mr. Cohen persuasively detailed all of the reconstruction and extensive maintenance he and his crew undertook over those years and explained the ERIN RENEE's overall value to his fleet of vessels. Mr. Martin estimated that it would cost between $2.4 million and $2.7 million to bring her back to service, a value range that included approximately $300,000 in upgrades to the vessel. In accordance with this testimony and the Court's instructions to the jury regarding the determination of fair market value in the absence of comparable sales, it was reasonable for the jury to conclude that fair market value of the vessel was $2.4 million.

Next, the jury was instructed to consider what would be a reasonable cost to repair the vessel. The jury determined, based on the evidence, that the cost of repair was $2.1 million. Because that number was less than the $2.4 million fair market value, the jury awarded the lower

---

[3] All references to Mr. Cohen refer to Mr. Daniel Cohen, the owner of the ERIN RENEE. The jury also heard testimony from Mr. David Cohen, but his testimony is not implicated in Defendant's motion.

damage amount in the form of the reasonable cost of repair. *DiMillo v. Sheepscot Pilots, Inc.*, 870 F.2d 746, 751-52 (1st Cir. 1989); *The Baltimore*, 75 U.S. 377, 386-87 (1869). Defendant argues that the jury impermissibly disregarded the cost of repair values its experts put forth and instead substituted its own number. Moreover, Defendant advocates more scrutiny in this case because it argues that the jury's lack of specialized knowledge in commercial fishing vessels shows through in its verdict. The Court declines to apply a heightened scrutiny and finds that the jury indeed did have a basis in the evidence for their finding of the cost of repair.

Relying once again on Mr. Martin's work in determining an appropriate post-sinking plan for the ERIN RENEE, the jury determined that the fair market value was $2.4 million and, reducing that number by the $300,000 in upgrades he estimated should be done to improve her condition and efficiency, could have rationally concluded that the reasonable cost of repair was $2.1 million. The jury sits as the fact finder and weighs the evidence and credibility of the witnesses presented. Moreover, on a new trial motion, the Court independently may consider whether a particular witness was credible and weigh the evidence. *Jennings v. Jones*, 587 F.3d 430, 436 (1st Cir. 2009). The Court finds that Mr. Martin was a most credible witness. That the jury did not credit the repair estimates offered by Promet's shipyard and others is not unreasonable. Testimony was elicited demonstrating that several of those estimates were not complete, or in the case of the Promet estimate, was self-interested. The Court finds the jury's determination of the cost of repair damages was practical, realistic, based on common-sense principles, and was supported by the evidence.

B. Depreciation

Defendant next takes issue with the jury's consideration of the depreciation value of the ERIN RENEE in rendering its verdict and damages award. The jury was instructed that it could

take into account the depreciation of the ERIN RENEE when determining the reasonable cost to repair her. There was a separate line item for depreciation on the jury verdict form. The jury heard testimony from Defendant's witness, Mr. Dubois, and Plaintiffs' witness, Mr. Martin, regarding depreciation amounts on the ERIN RENEE. Mr. Dubois testified that he would allow approximately 2-3% for depreciation per year and then factor in whether any upgrades or replacements had been made and the quality of maintenance performed on the vessel to arrive at a balance of depreciation plus capital improvements. Mr. Martin testified that his $2.4 million cost of repair estimate could be reduced by approximately $300,000 in value-adding upgrades to depreciate the ERIN RENEE's value.

During deliberations, the jury requested a clarification on the "new for old" rule. The Court, after consulting with the parties and without objection from either party, instructed the jury that "where repair or replacement costs form the basis of the damage award, the [jury] must determine whether the repair or replacement adds new value to or extends the useful life of the property; if so, an appropriate reduction from the full repair or replacement costs should be made." *Pillsbury Co. v. Midland Enters., Inc.*, 715 F. Supp. 738, 764 (E.D. La. 1989) (citations omitted). This legal standard clearly sets forth that if the jury determines that there is no new value added to the property, then it does not need to reduce the value of the damage award. After hearing the evidence and the Court's instructions, the jury ultimately decided not to include a depreciation dollar value on the verdict form.

Defendant argues that the jury's decision not to depreciate the vessel on the verdict form was an error, though Defendant admits that the jury received some evidence of depreciation and was properly instructed on the law. Plaintiffs counter that the jury did depreciate the value of the ERIN RENEE in awarding Plaintiffs $2.1 million because that number is in line with

Mr. Martin's $2.4 million estimate to repair the vessel that contained about $300,000 in improvements and upgrades. Plaintiffs argue that this reduction in Mr. Martin's estimate evidences the jury's acknowledgment of its prerogative to reduce the cost to repair for "new for old" parts.

The Court agrees with Plaintiffs. The jury was presented with evidence on depreciation and "new for old" and was properly instructed on the law. Again, it is clear that the jury relied on Mr. Martin's testimony in determining the reasonable cost to repair the ERIN RENEE and the $300,000 value of the new parts and improvements that he recommended adding to the vessel while she was being repaired as a result of the sinking. While the jury may not have indicated in the depreciation line item on the jury verdict form that depreciation was appropriate, it does appear that the jury took those "new for old" upgrades into account in fashioning a cost of repair damages award.

Moreover, the Court credits Plaintiffs' argument that the jury's award was logically crafted from the evidence and based on the law of damages as instructed. Adding the $2.1 million in cost of repair with the $242,000 award for lost profits, Plaintiffs will receive $2,342,000 million, an amount slightly less than the $2.4 million fair market value that the jury determined the ERIN RENEE was worth prior to her sinking. *Standard Oil Co. v. S. Pac. Co.*, 268 U.S. 146, 155 (1925) ("Where property is destroyed by wrongful act, the owner is entitled to its money equivalent, and thereby to be put in as good position pecuniarily as if his property had not been destroyed."). Therefore, the Court finds that the jury's verdict was consistent with the evidence and based on a rational and common-sense consideration of the evidence presented to it. *Consolo v. George*, 58 F.3d 791, 795 (1st Cir. 1995) (where a "verdict [i]s entirely consistent with the evidence, the assessment of damages cannot be disturbed unless

the award exceeded any rational appraisal or estimate of the damages that could be based upon the evidence or was grossly excessive, inordinate, shocking to the conscious of the court, or so high that it would be a denial of justice to permit it to stand" (internal quotation marks and citation omitted)).

    C.    Joseph DiMaio's Vessel Valuation Testimony

Defendant's final point in support of its request for a new trial relates to the Court's partial limitation of Joseph DiMaio's testimony at trial. Mr. DiMaio is a vessel owner who apparently was interested in May of 2008 in making an offer to purchase the ERIN RENEE. He commissioned a boat surveyor to examine the vessel, presumably to determine what price he should offer for the vessel. Mr. Cohen later learned that Mr. DiMaio looked at the ERIN RENEE while she was at the Promet facility, but he did not know of Mr. DiMaio's interest in the vessel. Mr. DiMaio never made an offer to Mr. Cohen to purchase the ERIN RENEE.

The Court permitted Mr. DiMaio to testify to all of the above, except to the exact price he may have offered, but never did offer, to Mr. Cohen for the ERIN RENEE. The survey Mr. DiMaio commissioned estimated that the vessel was worth $500,000, and Defendant represented that Mr. DiMaio would have testified that although he never made an offer, had he done so he would have offered to pay that amount for the ERIN RENEE. The testimony of the ERIN RENEE's owner, Mr. Cohen, was that the vessel was not listed for sale and Mr. DiMaio never approached him with an offer. The Court found that Mr. DiMaio's testimony as to the amount he would have offered had he made an offer (which he did not) was speculative and therefore not helpful to the jury in determining fair market value. Mr. DiMaio's testimony in this regard was properly excluded.

III. CONCLUSION

The Court finds that the jury's verdict in this case was reasonable, consistent with the credible evidence and the law, and appropriate. There is no reason for the Court to second guess the jury's determinations after a hard-fought and well-tried case. Defendant's Motion for a New Trial is DENIED.

IT IS SO ORDERED.

/s/ John J. McConnell, Jr.
John J. McConnell, Jr.
United States District Judge
January 9, 2012